NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 15a0002n.06

No. 13-6011

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jan 05, 2015
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| **Plaintiff-Appellee,** | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF KENTUCKY |
| JAMES RAYMOND KENNEDY, | ) | |
| | ) | **OPINION** |
| **Defendant-Appellant.** | ) | |
| | ) | |

Before:  DAUGHTREY, MOORE, and CLAY, Circuit Judges.

**KAREN NELSON MOORE, Circuit Judge.**  James R. Kennedy pleaded guilty to one count of willfully aiding and abetting in the preparation and filing of false tax returns under 26 U.S.C. § 7206(2) and was sentenced to thirty-six months of imprisonment and one year of supervised release.  He directly appeals his sentence, arguing that the district court erred in several respects in accepting the Presentence Report's ("PSR") calculation of his base offense level and in denying him an acceptance-of-responsibility reduction.  He also brings an ineffective-assistance-of-counsel claim.  For the reasons set forth in this opinion, we **AFFIRM** the sentence of the district court and **DECLINE** to review at this time Kennedy's ineffective-assistance-of-counsel claim.

## I.  FACTS AND PROCEDURE

Kennedy ran a tax-return-preparation business, J.R. Kennedy and Associates, from 2006 through April 2009.  R. 55 (Plea Agreement ¶ 3) (Page ID #197).  Based on his prior military

work experience and contacts in the aerospace industry, he held himself out as an expert in preparing taxes for those connected to the aerospace industry. R. 90 (Sent'g Tr. at 44–45) (Page ID #868–69). On April 14, 2011, Kennedy was indicted on twenty-three counts of willfully aiding and abetting in the preparation and filing of false tax returns under 26 U.S.C. § 7206(2). R. 1 (Indictment ¶¶ 1–5) (Page ID #1–5). After two days of trial, Kennedy pleaded guilty to Count 19 of the original indictment. R. 55 (Plea Agreement ¶ 1) (Page ID #197). The plea agreement stated that the 2011 United States Sentencing Guidelines Manual ("U.S.S.G.") would determine Kennedy's guidelines range, but it also stated that "[t]he parties have no agreement as to the applicable guidelines." *Id.* ¶ 5 (Page ID #198). At sentencing, the government moved to dismiss the remaining twenty-two counts. R. 90 (Sent'g Tr. at 20) (Page ID #844).

The Presentence Report ("PSR") determined Kennedy's total offense level to be 18 and his criminal history category to be I. R. 78 (PSR ¶¶ 26, 33) (Page ID #309–10). This yielded a guidelines range of 27 to 33 months' imprisonment. *Id.* ¶ 66 (Page ID #316). The total offense level reflected a base offense level of 18, plus an uncontested two-level enhancement for specific offense characteristics, minus two points for acceptance of responsibility under U.S.S.G. § 3E1.1(a). *Id.* ¶¶ 18–26 (Page ID #309). The PSR arrived at the base offense level because it stated that Kennedy had caused a total tax loss of $345,715.32 to the United States. *Id.* ¶ 11 (Page ID #307). This loss corresponds to a base offense level of 18 under U.S.S.G. § 2T1.4, the relevant guideline for 26 U.S.C. § 7206(2) offenses. *Id.* ¶ 18 (Page ID #309). The PSR also considered 118 other tax returns Kennedy prepared for forty-two clients as relevant conduct in

calculating this total tax loss (it discusses 119 total returns, one of which is the return in Count 19 to which Kennedy pleaded guilty). *Id.* ¶¶ 9–11, 67 (Page ID #307, 316).

Kennedy submitted a nine-page document called "Objections and Corrections to the Presentence Investigation Report for James Raymond Kennedy" dated May 9, 2013 to the probation officer preparing the PSR. *Id.* at 16–25 (Page ID #319–28). In relevant part, he objected to the accuracy of the total tax-loss figure, *id.* at 21 (Page ID #324), and the PSR's inclusion of the 118 other tax returns as relevant conduct, contesting the PSR's description of these returns as including illegitimate or inflated deductions, *id.* at 17 (Page ID #320). The PSR includes an Addendum addressing the objections filed by Kennedy. *Id.* at 26 (Page ID #329). It states that before the probation officer submitted the final PSR, Kennedy, "both in person and through counsel, withdrew the majority of his objections," including his challenge to the tax-loss calculation. *Id.* The Addendum states that Kennedy still "objects to the factual statements" in paragraph ten of the PSR "in regards to the fraudulent deductions"—one of the paragraphs describing the relevant conduct of the 118 other false tax returns—and notes that "[t]his objection remains unresolved and does impact the guidelines." *Id.* at 27 (Page ID #330).

The government submitted a letter to the probation officer objecting to the PSR's acceptance-of-responsibility recommendation. *Id.* at 29–31 (Page ID #332–34). The probation officer declined to reconsider its recommendation, but noted that "absent any clear authority, the probation officer believes this is an issue best for the Court to decide." *Id.* at 32 (Page ID #335). The government continued to object to the acceptance-of-responsibility recommendation in its

Sentencing Memorandum.  R. 69 (Gov't's Sent'g Mem. at 3–6) (Page ID #249–52).  Kennedy did not address either the tax-loss calculation or the relevant conduct of the 118 other tax returns in his Sentencing Memorandum.  R. 67 (Def.'s Sent'g Mem.) (Page ID #222–31).

The district court held a sentencing hearing on July 18, 2013.  Kennedy did not object to anything in the PSR at the sentencing hearing.  After hearing from the government and Kennedy's trial counsel, the district court denied Kennedy an acceptance-of-responsibility reduction.  R. 90 (Sent'g Tr. at 19) (Page ID #843).  The court pointed to (1) the fact that Kennedy "pled guilty on the third day of a trial"; (2) the now-withdrawn objections Kennedy submitted to the PSR that the court characterized as "maintain[ing] his innocence"; and (3) letters submitted in support of Kennedy, including from his family and Sergeant Major Hubert "quoting the defendant in denying his responsibility for illegal conduct and basically just saying that he made mistakes and didn't want to fight the government."  *Id.* at 18–19 (Page ID #842–43).  The district court then sentenced Kennedy to thirty-six months of imprisonment and one year of supervised release.  *Id.* at 48 (Page ID #872).

Kennedy appeals the district court's sentence.  He makes fives claims:  (1) that the district court abused its discretion in relying on the tax-loss calculation in the PSR; (2) that the district court abused its discretion in determining that the 118 other tax returns described in the PSR constituted relevant conduct; (3) that the district court committed an error of law in applying the acceptance-of-responsibility guidelines; (4) that the district court clearly erred in denying Kennedy an acceptance-of-responsibility reduction; and (5) that Kennedy's trial

counsel's failure to review the objections Kennedy wrote to the PSR before sending them to the probation officer and his failure to object to the PSR's tax-loss figure amounted to ineffective assistance of counsel. Appellant Br. at 2.

## II. ANALYSIS

### A. Plain Error Review Applies to Kennedy's Tax-Loss Calculation & Relevant Conduct Claims.

Kennedy did not raise his tax-loss calculation or relevant conduct claims in his sentencing memorandum or at the sentencing hearing. Under *United States v. Bostic*, 371 F.3d 865 (6th Cir. 2004), "sentencing arguments raised for the first time on appeal are reviewed under the plain-error standard if the court asked 'the parties whether they have any objections to the sentence just pronounced that have not previously been raised.'" *United States v. Brooks*, 628 F.3d 791, 796 (6th Cir. 2011) (quoting *Bostic*, 371 F.3d at 872–73). Kennedy argues that the standard of review on appeal should be abuse of discretion, rather than plain error, because the district court "did not ask for any *additional* objections beyond those raised prior to the pronouncement of sentence." Appellant Br. at 18.

After pronouncing his sentence, the district court asked, "Is there any legal objection to the sentence as stated, [defense counsel]?" R. 90 (Sent'g Tr. at 52) (Page ID #876). Kennedy's counsel replied "No legal objection; no, your Honor." *Id.* We have held on several occasions that phrasing almost exactly the same as that used by the district court in this case satisfies *Bostic*. *See, e.g.*, *United States v. Herrera-Zuniga*, 571 F.3d 568, 577–78 (6th Cir. 2009) (holding that "the sentencing judge complied with the *Bostic* rule" by "ask[ing] the parties

whether they had '[a]ny legal objection to the sentence being imposed'"); *United States v. Blackie*, 548 F.3d 395, 398 (6th Cir. 2008) (holding that "the district judge provided the parties an opportunity to object following the imposition of the sentence" by "ask[ing] the parties if they had 'any legal objection to the sentence imposed'").

Thus, the district court properly complied with *Bostic*, and the standard of review is plain error. To show plain error, "there must be (1) error, (2) that is plain, . . . (3) that affects substantial rights[, and] (4) . . . the error seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings." *United States v. Maliszewski*, 161 F.3d 992, 1003 (6th Cir. 1998) (internal quotation marks and citation omitted).

**B. The District Court Did Not Plainly Err in Relying on the Tax-Loss Calculation in the PSR.**

Kennedy argues that the district court erred in accepting the PSR's calculation of total tax loss because it is "manifestly unreliable." Appellant Br. at 16. He asserts that "in analogous circumstances, a threshold finding of reliability has been imposed on sentencing courts" and that a similar requirement should be imposed on the reliability of undisputed facts in PSRs. *Id.* at 22–23. Such a requirement, Kennedy argues, also comports with due process. *Id.* at 23.

When the facts in a PSR are undisputed, we repeatedly have held that the district court may rely on those undisputed facts and does not need to find those facts independently. *See, e.g.*, *United States v. Geerken*, 506 F.3d 461, 467 (6th Cir. 2007) ("When a defendant fails to produce any evidence to contradict the facts set forth in the PSR, a district court is entitled to rely on those facts when sentencing the defendant."); *United States v. Treadway*, 328 F.3d 878, 886 (6th

Cir. 2003) ("We can find no reason to require a district court to make independent findings outside the PSR when the facts are undisputed. . . . Accordingly, we hold that a district court may properly rely exclusively on the PSR for drug quantity when the drug quantity contained therein is not in dispute."). This case law accords with Federal Rule of Criminal Procedure § 32(i)(3)(A), which states that a sentencing court "may accept any undisputed portion of the presentence report as a finding of fact." Fed. R. Crim. P. 32(i)(3)(A). It is only when the defendant disputes a fact that "Rule 32(c)(1) and § 6A1.3 of the Sentencing Guidelines indicate that reliance on the PSR is insufficient" and the district court must actually make its own factual findings. *Treadway*, 328 F.3d at 886.

At the same time, we have held that evidence relied on by a sentencing court must have at least a minimum indication of reliability. Whether this line of cases applies to *undisputed* facts in a PSR is less clear. In the case that Kennedy cites as analogous, *United States v. Reid*, 357 F.3d 574 (6th Cir. 2004), we held that "[t]he credited testimony of a single witness is sufficient to support factual findings by a preponderance of the evidence on sentencing, which will survive clear error review, *if that evidence bears more than a minimum indicium of reliability.*" *Reid*, 357 F.3d at 582 (emphasis added) (internal quotation marks and citation omitted). However, the defendant had objected at sentencing that the evidence was insufficient to support the "'felonious use' enhancement" at issue. *Id.* at 577–78. Other Sixth Circuit cases reaffirming this reliability requirement have also focused on disputed facts. *See, e.g.*, *United States v. Denson*, 728 F.3d 603, 614 (6th Cir. 2013) ("[W]hile a district court must base its findings on reliable information,

a sentencing court may accept any undisputed portion of the presentence report as a finding of fact.") (internal quotation marks and citations omitted); *United States v. Greene*, 71 F.3d 232, 235 (6th Cir. 1995) (discussing this "minimum indicia of reliability" requirement as being based in U.S.S.G. § 6A1.3(a), which focuses on situations "[w]hen any factor important to the sentencing determination *is reasonably in dispute*") (emphasis added). But at least a few cases have asserted this threshold requirement of reliability without clearly tying it to disputed evidence. *See, e.g.*, *United States v. Ward*, 68 F.3d 146, 149 (6th Cir. 1995) (holding that when estimating drug quantity, "the court finding must have some minimum indicium of reliability beyond mere allegation" without specifying if that drug quantity was disputed at sentencing) (internal quotation marks and citation omitted); *United States v. Partington*, 21 F.3d 714, 717 (6th Cir. 1994) ("When a defendant has pled guilty to certain counts of an indictment in exchange for dismissal of other counts, the facts used for sentencing must have some minimal indicium of reliability beyond mere allegation.") (internal quotation marks and citation omitted).

Given that Kennedy did not object to the PSR at his sentencing hearing, the district court did not plainly err in accepting the undisputed tax-loss calculation figure.

Moreover, Kennedy's trial counsel appeared to agree expressly to the facts in the PSR, which would preclude him from challenging those facts on appeal. The following exchange occurred at the beginning of the sentencing hearing:

> THE COURT: . . . I note that there were numerous objections filed. Most of those have been resolved. According to my information, the only one that requires a resolution by the Court is Objection No. 3 to Paragraph 10 of the PSR; is that correct?

> . . .
> MR. GORDON: . . . Well, the probation officer says Objection No. 3 to Paragraph 10 does not impact the guidelines; however, it does offer context into Kennedy's overall conduct. . . . So it really doesn't affect the guidelines.
> . . .
> THE COURT: Okay. The Court will note all objections for the record, but there are none raised by the defendant at this point that require a ruling from the Court, as they do not impact the guidelines.

R. 90 (Sent'g Tr. at 3–5) (Page ID #827–29). Thus, Kennedy's trial counsel's apparent agreement with the district court that the written objections had all been "resolved" or did not impact the guidelines could qualify as express agreement to the facts within the PSR. "[O]nce a defendant has 'expressly agreed that he should be held accountable' for the amount of drugs involved, 'he cannot now challenge the court's factual finding on this issue.'" *United States v. Pruitt*, 156 F.3d 638, 648 (6th Cir. 1998) (quoting *United States v. Nesbitt,* 90 F.3d 164, 168 (6th Cir. 1996)).

Assuming that a reliability requirement still applies to the tax-loss figure, we conclude that the figure was not so patently unreliable as to fail the minimum-indicium-of-reliability requirement. The PSR does not explain mathematically how it arrived at the figure of $345,715.32. R. 78 (PSR ¶ 11) (Page ID #307). Nor does the PSR explain how the illegitimate and legitimate tax returns averages were calculated. *Id.* ¶ 12 (Page ID #307–08). We do note, however, that multiplying the difference between the illegitimate-returns average and the legitimate-returns average by 119 total tax returns yields a figure of $342,224. This figure is close enough to the total tax-loss figure such that the latter is not patently unreliable.

**C.** **The District Court Did Not Plainly Err in Accepting the PSR's Relevant Conduct Determination.**

Kennedy argues that the district court committed an error of law in accepting the PSR's characterization of the other 118 allegedly improper tax returns as relevant conduct. Appellant Br. at 25. He argues that, in determining whether something is relevant conduct, "'the conduct should not be considered at a level of generality that would render worthless the relevant conduct analysis.'" *Id.* (quoting *United States v. Hill*, 79 F.3d 1477, 1483 (6th Cir. 1996)). Kennedy claims that "the PSR offers no factual detail that would have permitted the district court to move beyond this impermissible level of generality" because "[n]owhere are the dates, improper deductions, or tax loss amounts for each of these 119 returns described." *Id.* at 25–26.

Section 1B1.3 of the sentencing guidelines permits courts to consider "relevant conduct" in calculating the base offense level. U.S.S.G. § 1B1.3. "For tax offenses, application note two to § 2T1.1 states that in determining a defendant's total tax loss, 'all conduct violating the tax laws should be considered as part of the same course of conduct or common scheme or plan *unless the evidence demonstrates that the conduct is clearly unrelated*.'" *United States v. Pierce*, 17 F.3d 146, 150 (6th Cir. 1994) (emphasis added). We have held that "'all conduct violating the tax laws' must refer to *all relevant criminal conduct underlying the charged offense*," not civil tax liability. *United States v. Daniel*, 956 F.2d 540, 544 (6th Cir. 1992).

The evidence here does not demonstrate that the 118 other tax returns cited in the PSR are "clearly unrelated." *Pierce*, 17 F.3d at 150. Application Note 2 of § 2T1.1 provides as an example of "same course of conduct or common scheme or plan" that "the violation in each

instance involves a false or inflated claim of a similar deduction or credit." U.S.S.G. § 2T1.1 cmt. n.2. The PSR stated exactly that: "[a] review of the returns reveals that Kennedy often used the same amount for the same deduction on different individual's [sic] returns, deductions that he inflated." P. 78 (PSR ¶ 10) (Page ID #307). The PSR also focused on criminal conduct, describing the 118 returns as containing "falsified deductions." *Id.* ¶ 9 (Page ID #307). Finally, the PSR stated that Kennedy prepared all of these returns through his tax preparation business "during the tax years 2004 through 2008," which could support the existence of a "common scheme." *Id.* To the extent that Kennedy's argument is actually with the facts in the PSR—such as his argument that the PSR does not demonstrate that in preparing the 118 tax returns, Kennedy actually *violated* the tax code, Appellant Reply Br. at 4—he runs into the same problems discussed above with the tax-loss figure. He did not challenge these factual determinations in the PSR. And unlike with the tax-loss figure, he does not argue that these facts are patently unreliable. Our case law is clear that the district court was entitled to rely on these facts.

Thus, the district court did not plainly err in accepting the PSR's characterization of the 118 other tax returns as relevant conduct.

## D. The District Court Did Not Err in Denying Kennedy an Acceptance-of-Responsibility Reduction.

### 1. Standard of Review

"The defendant has the burden of demonstrating by a preponderance of the evidence that a reduction for acceptance of responsibility is warranted." *United States v. Banks*, 252 F.3d 801, 806 (6th Cir. 2001). We review a district court's determination of acceptance of responsibility

under "the overall deferential scope of review set forth in *Buford v. United States*, 532 U.S. 59, 64–65 (2001)." *United States v. Bolden*, 479 F.3d 455, 464 (6th Cir. 2007). "[P]urely factual components of the acceptance of responsibility determination" are rejected "only if . . . clearly erroneous." *Id.* "[T]he trial court's determination of whether a defendant has accepted responsibility" is "[g]enerally a question of fact." *United States v. Morrison*, 983 F.2d 730, 732 (6th Cir. 1993). "However, if the only issue presented is the propriety of applying the reduction to the uncontested facts, the decision is reviewed de novo." *United States v. Coss*, 677 F.3d 278, 290 (6th Cir. 2012) (internal quotation marks omitted).

Here, neither party contests the facts relevant to the acceptance-of-responsibility reduction, so we review the district court's decision de novo.

**2. The district court properly denied Kennedy an acceptance-of-responsibility reduction**

Kennedy argues that the district court erred in denying him an acceptance-of-responsibility reduction. First, he argues that "[t]he district court improperly penalized [him] for pleading guilty after two days of trial" in denying him an acceptance-of-responsibility reduction because the court focused only on the waste of government resources in preparing for trial. Appellant Br. at 28. In so doing, Kennedy argues that the district court misunderstood the "concerns animating § 3E1.1(a)," which are not "concerns about the consumption of government resources, but . . . suspicion toward the trustworthiness of post-conviction remorse." *Id.* Manufactured remorse is not present in this case, Kennedy argues, because Kennedy pleaded guilty after only two days of trial and "very little of the evidence presented by the government

. . . demonstrated that Mr. Kennedy's preparation of these false tax documents was willful." *Id.* at 30–31.

Second, Kennedy argues that the district court erred because he "fully satisfied the requirements of Section 3E1.1(a)." *Id.* at 32–33. He points to his guilty plea prior to conviction by trial, and that he "repeatedly and truthfully admitt[ed] responsibility for the criminal conduct to which he pled" at his sentencing hearing. *Id.* at 33. Kennedy notes that his objections to the PSR were withdrawn and claims that he did not "'falsely den[y], or frivolously contest[], relevant conduct'" in that memorandum, so it should not count against a reduction. *Id.* at 37 (quoting U.S.S.G. § 3E1.1(a) cmt. n.1(A)). Finally, Kennedy argues that "it was improper for the district court to give" letters from his wife and Sergeant Major Hubert "more weight than Mr. Kennedy's own conduct and statements" because "the guidelines themselves emphasize a defendant's own conduct and statements." *Id.* at 38.

We first note that Kennedy's guilty plea standing alone is insufficient to entitle him to an acceptance-of-responsibility reduction. As Application Note 3 makes clear, "[a] defendant who enters a guilty plea is not entitled to an adjustment under this section as a matter of right." U.S.S.G. § 3E1.1 cmt. n.3. Moreover, Kennedy does not clearly fall into the category of cases described in Application Note 3 as "constitut[ing] significant evidence of acceptance of responsibility" because he did not plead guilty "*prior to the commencement of trial*." *Id*. (emphasis added). And even the "significant evidence" it describes "may be outweighed by conduct of the defendant that is inconsistent with such acceptance of responsibility." *Id.*

Turning to the factors cited by the district court, we hold that the district court did not commit an error of law in considering the resources the government spent in undertaking two days of trial in deeming Kennedy's plea untimely.

At the sentencing hearing, the district court focused on the fact that the "most if not all of the efficiencies associated with a timely plea were at least minimized in this case" because 'the government prep was done, a jury was impaneled, [and] three days of evidence had been admitted.'" R. 90 (Sent'g Tr. at 18) (Page ID #842). The district court did not discuss the timing of Kennedy's plea as demonstrating manufactured or insincere remorse.

Looking first to the Sentencing Guidelines, the government rightly points out that Application Note 1(H) invites a district court to consider "the timeliness of the defendant's conduct in manifesting the acceptance of responsibility" under § 3E1.1(a). U.S.S.G. § 3E1.1 cmt. n.1(H). Admittedly, this note does not explicitly link timeliness to waste of government resources. In contrast, Section 3E1.1(b), which allows the government to move for one additional level of reduction if a defendant satisfies § 3E1.1(a) and "timely notif[ied] authorities of his intention to enter a plea of guilty," does explicitly invite consideration of waste of government resources. U.S.S.G. § 3E1.1(b). The subsection links timely notification to "permitting the government to avoid preparing for trial and permitting the government and the court to allocate their resources efficiently." *Id.* This might indicate, as Kennedy argues, that waste of government resources can *only* be considered in § 3E1.1(b). Appellant Br. at 29.

However, Application Note 6 appears to distinguish "timeliness" under § 3E1.1(a) and (b) on the basis of how early a defendant pleads guilty, and therefore how much more government resources are saved. It states that:

> The timeliness of the defendant's acceptance of responsibility is a consideration under both subsections, and is context specific. *In general, the conduct qualifying for a decrease in offense level under subsection (b) will occur particularly early in the case.* For example, to qualify under subsection (b), the defendant must have notified authorities of his intention to enter a plea of guilty *at a sufficiently early point in the process so that the government may avoid preparing for trial and the court may schedule its calendar efficiently*.

U.S.S.G. § 3E1.1 cmt. n.6 (emphasis added). A plausible reading of this note is that a defendant who qualifies under subsection (b) will likely have permitted the government *to avoid preparing for trial entirely*, whereas the government may have had to incur some expenses in preparing for trial with a defendant who qualifies for subsection (a) only. This note thus suggests that waste of government resources can be considered under both § 3E1.1(a) and (b).

The guidelines commentary also invites consideration of manufactured remorse, as Kennedy claims. But the commentary does not state that, once a defendant proceeds to trial, *only* manufactured remorse can be considered in the timeliness factor. And Application Note 2, which Kennedy cites, appears to be primarily focused on defendants *convicted by trial*. *Id.* cmt. n.2 (emphasis added) ("This adjustment is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, *is convicted*, and only then admits guilt and expresses remorse.").

We previously have noted that the timing of a plea wasted government resources in preparing for trial in holding that district courts properly denied an acceptance-of-responsibility reduction under § 3E1.1(a). In *United States v. Temple*, we upheld the district court's denial of an acceptance-of-responsibility reduction. No. 92-5714, 1993 WL 100088 (6th Cir. Apr. 5, 1993) (unpublished disposition). We explicitly noted that "it is apparent that the attorneys for both sides had prepared their cases for a one-and-a-half-day trial" in holding that the district court properly considered the defendant's guilty plea "on the day his case was set for trial" untimely. *Id.* at \*4. Similarly, in *United States v. McClellan*, we upheld the district court's denial of an acceptance-of-responsibility reduction under § 3E1.1(a) in part because the "defendant did not give timely notice of his intention to plead guilty." No. 96-6593, 1998 WL 165145, at \*5 (6th Cir. Mar. 30, 1998) (unpublished disposition). We noted the extra resources that had to be expended because the defendant pleaded guilty before trial only after being apprehended while fleeing the jurisdiction. *Id.* ("For example, defendant's flight from Tennessee extended the proceedings by more than four months. It required courts in two jurisdictions to go through additional efforts in petitioning the revocation of his bond, executing arrest warrants, conducting additional initial appearances, and appointing multiple attorneys.").

Similarly, we hold that the district court did not commit an error of law in citing the statements attributed to Kennedy in his letters of support in denying him an acceptance-of-responsibility reduction.

16

The district court properly cited the letters of support from Kennedy's wife and Sergeant Major Hubert as inconsistent evidence indicating that Kennedy did not accept responsibility for his crime. We have held that "[m]erely expressing regret for the consequences of the criminal conduct, *without admitting wrongful intent*, does not constitute acceptance of responsibility within the meaning of the Guidelines." *United States v. Genschow*, 645 F.3d 803, 813 (6th Cir. 2011) (emphasis added). The two letters of support indicate that Kennedy did not admit wrongful intent. Instead, he characterized his guilty plea as necessary in the face of the government's greater resources and his inept attorney, and described his conduct as "mistakes."

In Kennedy's wife's letter of support, she wrote that, "As he told me the morning he accepted the plea agreement, 'When you've got the full force and unlimited resources of the United States government against you, how can you really fight it?'" R. 68-1 (Ex. A at 11) (Page ID #245). Sergeant Major Hubert wrote:

> I have spoken with Mr. Kennedy right after he took the plea agreement and asked him why he took this agreement. *He stated to me that his attorney went into court totally unprepared to defend him and that on some level he had to take responsibility because he did make mistakes in some of the returns, but that's what they were, mistakes.*

*Id.* at 8 (Page ID #242) (emphasis added). Similar language has been held to indicate denial of criminal intent. *Genschow*, 645 F.3d at 813–14 (pointing to the defendant's statement that "while I now recognize that this Court has determined my actions to have been wrong, I continue to believe that I acted honorably and in good faith."); *United States v. Hughes*, 283 F. App'x 345, 353 n.6 (6th Cir. 2008) (noting that "our reading of the record did not reveal any indication that

17

Hughes accepted responsibility for his actions[,]" in part because of his statement "during the allocution that he 'made a mistake, honest mistake.'").

We have at least once looked to the defendant's conduct as reflected in letters of support submitted on the defendant's behalf as relevant to the acceptance-of-responsibility determination. *See United States v. Montague*, 519 F. App'x 337, 338–39 (6th Cir. 2013) ("The record shows that Montague has convinced his family of his innocence, as both his mother and aunt made statements indicating that Montague was only in this position because he accepted a ride from the wrong people on the day of his arrest.").

Moreover, Kennedy's argument that the letters are not reflective of his conduct—what should be the focus of the guidelines—is misplaced. The district court relied on the letters only to the extent of what the authors reported that *Kennedy had told them* about his reason for pleading guilty. R. 90 (Sent'g Tr. at 19) (Page ID #843) (emphasis added) ("[L]etters submitted in the record *quoting the defendant* in denying his responsibility for illegal conduct and basically just saying that he made mistakes and didn't want to fight the government certainly are not indicative of someone who understands the wrongfulness of his actions, accepts responsibility for them, and is even sorry for them."). Thus, the district court properly remained focused on Kennedy's conduct and whether his conduct revealed that he had accepted responsibility.

In sum, hold that the district court properly denied Kennedy an acceptance-of-responsibility reduction given his untimely plea and the statements attributed to him in his letters of support.[1]

### E. The Record is Insufficient to Evaluate Kennedy's Ineffective-Assistance-of-Counsel Claim.

Finally, Kennedy raises an ineffective-assistance-of-counsel claim. Appellant Br. at 39. Kennedy alleges two errors. First, he points to his trial counsel's alleged failure to review the written objections Kennedy prepared to the PSR before sending them to the probation officer. He argues this amounted to a breach of attorney-client privilege as well as a breach of an attorney's obligation to review the PSR with his client and "advise the client of the impacts communication with probation might have on sentencing outcomes." Appellant Br. at 40–41. He argues that his trial counsel's action prejudiced him because the objections became part of the record and the district court cited those objections in denying him an acceptance-of-responsibility reduction. *Id.* at 42–43. Second, Kennedy points to his trial counsel's failure to

---

[1]We reach this conclusion without resolving Kennedy's claim that the district court improperly considered his withdrawn objections to the PSR. Though Kennedy's claim is not without merit, there is sufficient evidence in the record demonstrating that the district court would have properly denied Kennedy an acceptance-of-responsibility reduction even without considering his withdrawn objections to the PSR, and therefore we do not resolve this aspect of Kennedy's arguments. *See, e.g., United States v. Cook*, No. 97-5943, 1999 WL 220116, at *4 (6th Cir. April 7, 1999) (unpublished disposition); *United States v. Hurst*, No. 92-6316, 1993 WL 272514, at *6 n.1 (6th Cir. July 21, 1993) (unpublished disposition); *United States v. Guarin*, 898 F.2d 1120, 1123 (6th Cir. 1990) (Jones, J., concurring). Nor do we resolve the parties' dispute over statements made at the sentencing hearing *after* Kennedy was denied the acceptance-of-responsibility reduction.

object to the "patently unreliable tax loss calculations at sentencing," *id.* at 43, the adoption of which "potentially resulted in a significant increase in the applicable sentencing range," *id.* at 44.

To prevail on an ineffective-assistance-of-counsel claim, a defendant must demonstrate that his trial "counsel's performance (1) 'fell below an objective standard of reasonableness' and (2) was prejudicial, i.e., 'but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *United States v. Franklin*, 415 F.3d 537, 556 (6th Cir. 2005) (quoting *Strickland v. Washington,* 466 U.S. 668, 693–94 (1984)). We generally do not address claims of ineffective assistance of counsel on direct appeal. *See, e.g., United States v. Bradley*, 400 F.3d 459, 462 (6th Cir. 2005) (citing cases). "However, there is a narrow exception to the general rule that ineffective assistance claims may not be considered on direct appeal—namely, when the existing record is adequate to assess properly the merits of the claim." *Franklin*, 415 F.3d at 555–56 (internal quotation marks and citation omitted).

The record here does not appear to fall within the "narrow exception" to the general rule of declining to consider ineffective-assistance-of-counsel claims on direct appeal. There is certainly more evidence than is typically the case on direct appeal of problems with Kennedy's trial counsel's performance. Kennedy's trial counsel appeared to imply that he had failed to review Kennedy's objections to the PSR at all before sending them to probation:

> The objections that were filed by Mr. Kennedy. I was not in the office for a couple of days then. I said, "Let's get the objections in." We got them in, we filed them. We sent them. We then had a meeting with the Probation Office. We went over the objections. We made a decision together that those are not appropriate objections.

20

R. 90 (Sent'g Tr. at 13) (Page ID #837).  And Kennedy's statement later in the sentencing hearing that he had "thought that [his trial counsel] was going to review those [objections] and give me counsel before those objections went in [to probation]" would seem to support this.  *Id.* at 32 (Page ID #856).  However, it is not clear if Kennedy's trial counsel had previously discussed the PSR with Kennedy or the objections Kennedy eventually articulated in written form.  If he had not, this would seem to cast significant doubt on there being any valid strategic reason for sending in Kennedy's written objections unreviewed.  But the record is insufficient to determine this.  Nor is it clear whether Kennedy's trial counsel had previously discussed with Kennedy how he might use any objections Kennedy conveyed to him in court.  Thus, it is not certain if Kennedy's written objections were protected by the attorney-client privilege.  In short, while there is more evidence in the record than is typically the case on direct appeal, factual issues still remain about Kennedy's trial counsel's actions.

Regarding the failure to object to the tax-loss calculation, the record does not contain any information as to why Kennedy's trial counsel withdrew Kennedy's original objection to the tax-loss calculation.  Thus, it is not possible to determine whether Kennedy's counsel had no strategic reason for doing so.  *See United States v. Gilmore*, 387 F. App'x 613, 617 (6th Cir. 2010) ("The court declines to rule on Gilmore's ineffective assistance claim on direct appeal because the existing record is not adequate to evaluate whether Gilmore's counsel had a strategic reason to withdraw his objection to the PSR's drug quantity.").

## III.  CONCLUSION

For the reasons set forth above, we **AFFIRM** the sentence of the district court and

**DECLINE** to review Kennedy's ineffective-assistance-of-counsel claim.