*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2000 FED App. 0106P (6th Cir.)
File Name: 00a0106p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

UNITED STATES OF AMERICA,
*Plaintiff-Appellee,*

*v.*  No. 99-6086

CYNTHIA WHITMAN,
*Defendant-Appellant.*

Appeal from the United States District Court
for the Western District of Tennessee at Memphis.
No. 99-20085—Jon Phipps McCalla, District Judge.

Argued: March 6, 2000

Decided and Filed: March 24, 2000

Before: SILER and GILMAN, Circuit Judges;
O'MALLEY, District Judge.[*]

---

## COUNSEL

**ARGUED:** Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for

---

[*] The Honorable Kathleen M. O'Malley, United States District Judge for the Northern District of Ohio, sitting by designation.

Appellant.    Stephen C. Parker, ASSISTANT UNITED STATES ATTORNEY, Memphis, Tennessee, for Appellee. **ON BRIEF:**  Stephen B. Shankman, OFFICE OF THE FEDERAL PUBLIC DEFENDER FOR THE WESTERN DISTRICT OF TENNESSEE, Memphis, Tennessee, for Appellant.    Stephen C. Parker, Vivian R. Donelson, ASSISTANT UNITED STATES ATTORNEYS, Memphis, Tennessee, for Appellee.

———————————

## OPINION

———————————

PER CURIAM. On April 26, 1999, Cynthia Whitman pled guilty to one count of bank embezzlement in violation of 18 U.S.C. § 656.  The district court denied Whitman a two-level downward adjustment for acceptance of responsibility under the United States Sentencing Guidelines and sentenced her to a thirteen-month term of imprisonment and five years of supervised release.  Whitman appealed, contending that she should have been granted the downward adjustment and that the district court judge should have recused himself because his comments and demeanor at the sentencing hearing reflected impermissible bias against her and her counsel.  For the reasons set forth below, we **VACATE** the sentencing order of the district court and **REMAND** for resentencing before a different judge.

## I. BACKGROUND

On July 24, 1995, Whitman began work as a teller at La Capitol Federal Credit Union in Louisiana.  Whitman failed to advise the credit union that she had previously been convicted of a misdemeanor embezzlement charge in 1989. On April 28, 1997, a branch manager of the credit union conducted a surprise audit of Whitman's teller drawer and discovered unauthorized withdrawals from five customer accounts totaling $6,940.  When confronted by an internal auditor and an FBI agent, Whitman gave a written confession in which she admitted to stealing the $6,940.  Whitman failed

at the end of the day is have you had a serious intellectual discussion—whether the person listened or not—on issues which would improve the practice of the law, that's all I want to do . . . ."

With all due deference to the district judge, the primary function of a judge is neither to "educat[e] the bar" nor to "improve the practice of the law."  Above all else, the mission of a federal judge is to "administer justice without respect to persons, and . . . faithfully and impartially discharge and perform all the duties incumbent upon [him] . . . under the Constitution and laws of the United States."  28 U.S.C. § 453 (judicial oath of office).

We must emphasize that there is no evidence that the district judge was actually swayed by bias in this matter, nor do we suggest that he allowed secondary considerations as to his mission to influence his judgment.  However, the district judge's lengthy harangue in this case had the unfortunate effect of creating the impression that the impartial administration of the law was not his primary concern.  We therefore believe it advisable to assign Whitman's resentencing on remand to a different judge.  *See Bercheny*, 633 F.2d at 476-77.

On remand, a new judge may or may not arrive at the same determination as did the district court below.  Indeed, as the above discussion reveals, valid grounds exist for a sentencing court to deny Whitman an acceptance of responsibility reduction.  In the end, though, "justice must satisfy the appearance of justice." *Anderson*, 856 F.2d at 747 (citing *In re Murchison*, 349 U.S. 133, 136 (1955)).

## III. CONCLUSION

For all of the reasons set forth above, we **VACATE** the sentencing order of the district court and **REMAND** for resentencing before a different judge.

acceptance of responsibility, did I do that?" Examined in context, it is possible that the district judge was referring not to counsel's conduct before the court that day but to the advice that counsel may have given or failed to give to Whitman prior to her presentence interview. Regardless, a court should carefully guard against giving the impression that its holdings are motivated by animosity towards a party's counsel. *See generally Anderson v. Sheppard*, 856 F.2d 741, 745 (6th Cir. 1988) ("The judge should exercise self-restraint and preserve an atmosphere of impartiality." (citation omitted)); *Webbe v. McGhie Land Title Co.*, 549 F.2d 1358, 1361 (10th Cir. 1977) ("Hence, appearance of impartiality is virtually as important as the fact of impartiality.").

We also note that despite numerous comments about the "attitude" of Whitman's counsel, the record does not reveal any display of impertinence or disrespect to the court on his part. Indeed, at oral argument, the government's attorney had nothing but positive things to say about the conduct of Whitman's counsel in this case. Absent clear justification, a court should treat parties and officers of the court with courtesy and respect. *See United States v. Robinson*, 635 F.2d 981, 986 (2d Cir. 1980) ("Trial judges, like all government officials, must exercise power with restraint, and display patience with counsel . . . ." (citation and internal quotation marks omitted)).

In addition to chastising Whitman's counsel, the district judge also spoke at length about his perceived mission as a federal judge. "I'm not attacking you personally. . . . [T]hat's the furthest thing from my mind, but I'm trying to begin the process of educating the bar so that the lawyers, the last bastion of making up their own mind and doing what they want to do[,] will start to conform their conduct to the rules." "I'm trying to teach people, because I have decided there is not much left in the United States for me to try to do except improve the practice of law . . . ." "I didn't reach this conclusion overnight, it has taken me almost eight years to get to this point where I have resolved as to what the problems are and what we need to start to address . . . ." "The question

to apprise the FBI of the fact that she had taken an additional $3,800 from two other accounts in which shortfalls had not yet been detected.

On March 23, 1999, the United States Attorney for the Western District of Louisiana filed a one-count bill of information against Whitman, charging her with bank embezzlement of $11,840 in violation of 18 U.S.C. § 656. (The record does not resolve the disparity between the $10,740 shortfall that the investigation uncovered and the $11,840 charged in the bill of information.) Whitman declared her intent to plead guilty and requested that the case be transferred to the Western District of Tennessee where she was then living. The district court in Louisiana agreed, and transferred her case pursuant to Rule 20 of the Federal Rules of Criminal Procedure. On April 26, 1999, Whitman pled guilty. Whitman advised the court, however, that she would be disputing the amount embezzled for the purposes of sentencing.

United States Probation Officer Anna Wells was assigned the responsibility for drafting Whitman's presentence report. When Wells interviewed Whitman, Whitman admitted to possibly having embezzled as much as $8,000, but stated that she did not believe that she had embezzled $11,840 as alleged by the government. Based on Whitman's refusal to admit to having embezzled the full amount, Wells recommended that Whitman be denied an adjustment for acceptance of responsibility.

After the initial presentence report was issued on June 1, 1999, Whitman contacted Wells and told her that "[t]here is no way I can dispute the $11,400. It could be $11,400." (Whitman was apparently referring to the $11,840 amount charged in the bill of information.) Whitman explained that her drug use during the period of her embezzlement made it hard for her to remember exactly how much money she had stolen. Wells subsequently issued a revised presentence report on July 2, 1999, recommending a two-point reduction for acceptance of responsibility and a guideline imprisonment

range of six to twelve months. The government, which had not objected to the original presentence report, also declined to object to the revised report.

On July 12, 1999, the district court conducted a sentencing hearing. Despite the unchallenged recommendation of the probation officer, the court found that Whitman had failed to accept responsibility for her crime and thus refused to grant her a two-point reduction under the sentencing guidelines.

## II. ANALYSIS

### A. Acceptance of responsibility

A district court's conclusion that a defendant is not entitled to an adjustment for acceptance of responsibility is generally considered a question of fact that should not be disturbed unless it is clearly erroneous. *See United States v. Childers*, 86 F.3d 562, 563 (6th Cir. 1996); s*ee also* U.S.S.G. § 3E1.1 cmt. 5 ("[T]he determination of the sentencing judge is entitled to great deference on review."). "However, this court renders *de novo* review of an acceptance of responsibility determination where . . . the only issue presented is the propriety of the application of the adjustment to uncontested facts . . . ." *Id.* (citation and internal quotation marks omitted).

The district court, shortly after the sentencing hearing began, characterized Whitman as "simply an untruthful human." Throughout the course of the extended hearing, the court then cited to multiple instances in which it concluded that Whitman had either lied or failed to volunteer truthful information. The majority of these instances, however, were unrelated to the question of whether Whitman had accepted responsibility for her crime of embezzlement.

Among the instances cited by the district court, the most relevant was Whitman's statement to Wells that she might have embezzled as much as $8,000, but that she did not believe that she embezzled the $11,840 charged in the bill of information. After the initial presentence report was

right to be sentenced by a fair and impartial judge and her Sixth Amendment right to effective assistance of counsel.

Because we are vacating Whitman's sentence due to the ambiguous record below, we need not address her claims of judicial bias. Nevertheless, in light of the district judge's intemperate demeanor towards Whitman's counsel, we believe that this case should be assigned to a different judge upon remand. *See Bercheny v. Johnson*, 633 F.2d 473, 476-77 (6th Cir. 1980) (listing, as one of the principal factors to be considered in determining whether a case should be remanded to a different judge, whether reassignment is advisable to preserve the appearance of justice).

The district court lectured Whitman's counsel at length as to his ethical responsibilities and rebuked him repeatedly for his conduct in this case. Indeed, a hearing that could have been conducted in less than an hour took nearly four hours—much of which was gratuitously devoted to the behavior of Whitman's counsel rather than the length of Whitman's sentence. A sampling of the district judge's comments will suffice. "[M]y whole observation in this case is that so far [your client's interest] hasn't come first at all. You have only talked of yourself and never talked of your client . . . ." "Now I hope that as a result of this conversation you'll re-examine your approach toward what your role is in these proceedings and you will re-examine placing your ego and your pride above your client's interest, and I don't imagine you will, because people in your situation don't usually, but you might . . . ." "[Y]ou need to explore in your soul the way that you have been conducting these matters routinely in the Court because your client couldn't possibly have done any worse than you did. And I want you to—I want you to think about that."

Most disturbing is a comment that can be read to imply that the conduct of Whitman's counsel would be held against Whitman. At one point, the district judge stated that Whitman's counsel would have "to go home and ask [him]self . . . did I contribute to Ms. Whitman not getting her

cited these omissions as partial justifications for its holding. Concerning Whitman's failure to inform her parents, the district court stated, "she apparently failed to tell her parents, that's part of—she doesn't have to do that, but if you won't go home and tell your folks, then maybe you hadn't gotten to that realization that you should, and that would be useful for the Court to know." Later in the hearing the court said, "I don't think you're required to go tell your parents if you don't want to, that is just another little piece to the puzzle here."

Regarding Whitman's failure to tell her employers at La Capitol Credit Union about her prior misdemeanor conviction for embezzlement, the court said: "And we had the fact that she went to work for a bank after being convicted of embezzlement at another bank. She failed to change her course of conduct knowing that her previous course of conduct was illegal. She is not entitled, as far as the Court can tell, to acceptance of responsibility in this case, and that's what we're trying to get to."

Our review of this sentencing determination is complicated, moreover, by the context within which it occurred. The district court's reasons for denying Whitman an adjustment for acceptance of responsibility were scattered throughout a lengthy hearing replete with statements that were seemingly unnecessary to the matter at hand, as will be discussed more fully in Part B below.

In the face of such an ambiguous record, we are uncertain whether the district court would have reached the same result had it relied solely on the permissible factors. We therefore conclude that Whitman's case should be remanded for resentencing.

## B. Judicial Bias

Whitman also contends that the district judge exhibited impermissible bias against her and her counsel, and was therefore required to sua sponte disqualify himself pursuant to 28 U.S.C. § 455(a). She further alleges that reversal is required because the judge's bias violated her due process

issued—recommending that Whitman not receive a downward adjustment for acceptance of responsibility—Whitman admitted to Wells that she had no basis to dispute the full amount charged in the indictment.

On appeal, Whitman maintains that, having been on drugs during the relevant period, she was unable to state definitively how much money she had taken. Whitman's claim of a poor memory is belied, however, by her statement to the probation officer that she "kept notes concerning the amount of money that she had stolen." Furthermore, it is somewhat suspect that Whitman claimed to have embezzled no more than $8,000 in light of the fact that any amount less than $10,000 would have placed her in a lower sentencing range. *See* U.S.S.G. § 2B1.1.

In any event, the district court's finding that Whitman intentionally misled the probation officer is not clearly erroneous. A false statement about a material fact to a probation officer may, by itself, justify a finding that a defendant has failed to accept responsibility. *See United States v. Greene*, 71 F.3d 232, 234 (6th Cir. 1995) (denying a reduction for acceptance of responsibility where the defendant had lied to a probation officer about his motivation for his crimes).

In addition to the preceding false statement, the court also noted that, as of the time of her sentencing hearing, Whitman had made no voluntary restitution of the monies that she had embezzled despite having been gainfully employed for the previous eighteen months. The application notes accompanying the acceptance of responsibility section permit a sentencing court to consider whether a defendant has made "voluntary payment of restitution prior to adjudication of guilt." U.S.S.G. § 3E1.1 cmt. 1. Thus, the district court's reliance on this factor was justified.

Unfortunately, we are unable to say with confidence that the district court based its determination solely, or even primarily, upon the above two factors. Along with the initial misstatement to Wells and Whitman's failure to make

restitution, the district court repeatedly referenced several other instances of Whitman's "untruthful" behavior that had no bearing on her acceptance of responsibility.

First, the district court cited the fact that Whitman told Wells that she had been diagnosed with cervical cancer and had had her cervix removed. To the contrary, the district court determined that Whitman had in fact only had dysplasia, a condition that is an early indicator of cancer, and that only a portion of her cervix was removed. In the context of the acceptance of responsibility determination, the district court concluded that this misstatement was "material in the sense that it would tend to paint [Whitman] in a more favorable light, tend to show that she was a person who had had extreme health problems in June of 1998."

We disagree. As Whitman points out, she did not file a motion for a downward departure on the basis of an "extraordinary impairment," nor did she argue that she should be treated more favorably because of her medical history. We therefore cannot see how the misstatement is material to the issue of whether she accepted responsibility for her crime of embezzlement.

The district court also found that Whitman had exhibited "untruthful" behavior by omitting any mention of her 1989 misdemeanor embezzlement conviction when she was hired by the La Capitol Credit Union in 1995 and again when she neglected to mention her two past embezzlement offenses when she began working for her most recent employer, Webster Lock, in 1998. As further evidence of Whitman's untruthful nature, the district court cited the fact that Wells had instructed Whitman to inform her parents of her offense, but that Whitman had not yet done so at the time of the sentencing hearing. (Wells intended to call Whitman's parents to verify their contact information so that Whitman could be informed if a family member became sick while she was in prison. Whitman asked if Wells could wait until Whitman first had the opportunity to speak to her parents and tell them about her conviction.)

We do not believe that any of these omissions are relevant to the acceptance of responsibility determination. Whitman's 1989 conviction was on a misdemeanor embezzlement charge, whereas La Capitol Credit Union only instructed applicants to identify prior felonies. Furthermore, even if the credit union had requested such information, Whitman's failure to list her 1989 conviction could, at most, be construed as a failure to accept responsibility for a *previous* crime. More importantly, all three of these omissions involve Whitman's failure to inform third parties—her parents and employers—of her offenses. Section 3E1.1 of the United States Sentencing Guidelines is concerned solely with whether a defendant admits or denies material conduct during her investigation, prosecution, or sentencing. Whether Whitman is or is not a generally candid person is thus not the proper inquiry in the case before us.

In sum, the district court cited two factors that were legitimate grounds for a denial of an acceptance of responsibility reduction (Whitman's misstatements about the scope of her offense and her failure to make voluntary restitution) and three factors that were not (the misstatement about her medical history, the failure to inform her employers about her prior crimes, and the failure to inform her parents about her present situation). We recognize the possibility that the district court premised its ultimate judgment only on the relevant factors and cited the other instances of Whitman's lack of candor solely for the sake of context. Looking at the entire record, however, we are unable to say with assurance that the district court's holding was properly limited to the relevant factors.

In fact, at least as far as Whitman's medical history is concerned, the district court expressly held that her misstatements were "material." As for Whitman's failure to inform her parents and employers about her offense, it cannot be determined from the record whether the district court relied upon these instances in reaching its determination. At times the district court openly questioned the relevance of these omissions. In the same breath, however, the court seemingly