RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0300p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

UNITED STATES OF AMERICA,

*Plaintiff-Appellee*,

*v.*

STANFORD RAY COLEMAN,

*Defendant-Appellant.*

No. 23-5624

───────────────

Appeal from the United States District Court for the Eastern District of Kentucky at Lexington.
No. 5:16-cr-00067-1—Danny C. Reeves, District Judge.

Argued: October 21, 2025

Decided and Filed: November 4, 2025

Before: GRIFFIN, THAPAR, and MATHIS, Circuit Judges.

───────────────

**COUNSEL**

**ARGUED:** Adam B. Murphy, Coleman Powell, NEW YORK UNIVERSITY, New York, New York, for Appellant. Andrew E. Smith, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee. **ON BRIEF:** Adam B. Murphy, Coleman Powell, Daniel S. Harawa, Megan Haddad, NEW YORK UNIVERSITY, New York, New York, for Appellant. Charles P. Wisdom Jr., Amanda Harris Huang, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

───────────────

**OPINION**

───────────────

THAPAR, Circuit Judge. Stanford Ray Coleman was resentenced for his third conviction for distributing drugs to small towns in Appalachia. He requested to be resentenced within the

recommended Guidelines range.  And he was.  But he now appeals that sentence on four procedural grounds.  Finding no error, we affirm his sentence, and we remand for consideration of a sentencing amendment.

I.

Stanford Ray Coleman spent three decades as a career drug trafficker.  He operated like a traveling salesman:  He would pop up in small Appalachian communities and sell his product to local dealers.  Eventually, law enforcement would catch on and arrest him.

The pattern dates to 1991.  When Coleman was 20, he was caught participating in a gang operation that used minors to traffic cocaine from Detroit to a small town in Ohio.  Within two years of his release, Coleman was again convicted for distributing mass quantities of opioids, this time from a hotel room in central Kentucky.  Two years after he was paroled, like clockwork, he set up shop in another rural Kentucky community.  From his residence in Atlanta, Coleman supplied a middleman with thousands of oxycodone pills to distribute to street-level dealers.  Right on cue, federal authorities indicted and arrested him for the third time for conspiring to distribute drugs.

Coleman's one-count indictment then spiraled into over 200 docket entries.  After a competency evaluation, Coleman elected to represent himself.  He then moved six times to dismiss the indictment, three times to require compliance with inapplicable federal procedural rules, and once to compel the disclosure of nonexistent surveillance records.  In many of these filings, he recycled the theory that district courts lack power over "sovereign citizens."  Coleman continued to represent himself throughout his four-day jury trial without calling a single witness to testify on his behalf.  A jury convicted him of conspiracy to distribute oxycodone.

At sentencing, the district court found that Coleman's prior convictions for conspiring to distribute drugs qualified him as a career offender.  *See* U.S.S.G. § 4B1.1.  Based on the career-offender enhancement, it calculated a recommended range of 262 to 327 months' imprisonment.  During allocution, Coleman didn't present any mitigating evidence or take accountability for his actions.  Instead, he accused the judge of influencing his jurors, falsely claimed that he didn't receive a copy of the final presentence investigation report, and attempted to read 50 to 100

pages challenging the validity of procedural rules for civil cases into the record.  In the absence of mitigating evidence, the district court concluded that no "positive characteristics" supported a downward variance.  R. 137, Pg. ID 1086.

Many factors, however, supported an upward variance.  The trial court noted that significant penalties had never deterred Coleman, and that over 80 percent of similar defendants were re-arrested after release.  That recidivism risk was particularly concerning because Coleman "prey[ed] on" rural areas without treatment options at the height of the opioid crisis.  *Id.*, Pg. ID 1089.  And Coleman's insistence that criminal drug laws didn't apply to him didn't suggest any newfound "respect for the law."  *Id.*, Pg. ID 1090–91.  The court varied upwards to sentence Coleman to 340 months' imprisonment to run consecutive to his state sentence, along with eight years of supervised release and a $15,000 fine.

Coleman appealed.  He continued to file his own motions before hiring (and repeatedly firing) appellate counsel.  Bookending his appeal, he filed two motions for compassionate release, both of which the district court denied.  We affirmed both his conviction and sentence.  *See United States v. Coleman*, 835 F. App'x 73, 75–77 (6th Cir. 2020).  The Supreme Court denied certiorari.

Then, our en banc court gave Coleman's case new life.  In 2019, we determined that inchoate drug crimes did not constitute controlled-substance offenses under U.S. Sentencing Guideline § 4B1.2(b).  *See United States v. Havis*, 927 F.3d 382, 387 (6th Cir. 2019) (en banc) (per curiam).  Our holding meant that some defendants previously convicted of conspiracies to distribute drugs no longer qualified as "career offenders."  *See United States v. Cordero*, 973 F.3d 603, 626 (6th Cir. 2020).  Coleman fell into this category.  But even though our en banc court decided *Havis* before Coleman filed the opening brief of his direct appeal, his counsel never mentioned that Coleman was eligible to have his sentence reduced.  So Coleman moved for relief under 28 U.S.C. § 2255 for ineffective assistance of counsel.  The district court granted his motion and docketed his case for resentencing.

Without the career-offender enhancement, the Probation Office calculated a recommended Guidelines range of 135 to 168 months' imprisonment.  Coleman agreed with this

recommendation, requesting "a guideline sentence without departure." R. 199, Pg. ID 1921. This time around, he presented evidence that childhood hardship had contributed to his decision to abuse and sell drugs. He also submitted a written apology to "take full responsibility for [his] actions" and "stop blaming others for the choices and decisions [he] made." *Id.*, Pg. ID 1924–25, 1927. At his resentencing hearing, he apologized to the trial court for "g[etting] involved with that sovereign citizen thing." R. 223, Pg. ID 2084–85. In response, the government continued to request a sentence above the Guidelines range based on Coleman's chronic recidivism and the damage his drug operations had inflicted on Appalachian communities.

The trial court considered this evidence at resentencing. It walked through the sentencing factors outlined in 18 U.S.C. § 3553(a), weighing Coleman's childhood trauma and postconviction rehabilitation efforts. It then granted Coleman's request for a within-Guidelines sentence of 168 months' imprisonment. It reimposed the same fine of $15,000. And it reduced his supervised-release term to six years under the same conditions, including mandatory searches and financial restrictions. Coleman timely appealed.

## II.

Coleman argues that the trial court committed four procedural errors during resentencing. He contends that the trial court failed to (1) credit Coleman for accepting responsibility five years after sentencing, (2) account for disparities between Coleman and his coconspirators' sentences, (3) consider mitigating evidence about Coleman's childhood, and (4) articulate a basis for three supervised-release conditions. None of these arguments has merit.

### A. Acceptance of Responsibility

Coleman asserts that the district court erroneously denied him a two-level reduction for acceptance of responsibility under § 3E1.1(a) of the U.S. Sentencing Guidelines. On his read, the trial court mistakenly believed it "lacked the discretion" to apply this reduction because it assumed it had to "reflexively defer" to the Sentencing Commission's commentary. Appellant Br. at 23, 27. We disagree.

During resentencing, Coleman's counsel argued that Coleman was entitled to the reduction for acceptance of responsibility because his "attitude has changed." R. 223, Pg. ID 2072. The government replied that no "case law or any guideline interpretations" supported applying the reduction to a defendant who accepted responsibility long after his trial. *Id.*, Pg. ID 2075. The district judge agreed. As he explained, "[t]he matter was resolved on a factual determination by the jury, and under those circumstances, there's no authority under the guidelines or the application notes" to apply the reduction. *Id.*, Pg. ID 2076.

We treat objections to the application of a sentencing guideline to a defendant as a mixed question of law and fact. *United States v. Brown*, 131 F.4th 337, 343 (6th Cir. 2025). We review the pure question of law posed by the interpretation of a sentencing guideline de novo, while we review its application to Coleman for clear error. *United States v. Florence*, 150 F.4th 773, 780 (6th Cir. 2025).

Coleman argues that the district court improperly denied him the reduction in § 3E1.1(a) based on its interpretation of the Sentencing Commission's commentary. That section directs district courts to "decrease the offense level by 2 levels" when "the defendant clearly demonstrates acceptance of responsibility for his offense." U.S.S.G. § 3E1.1(a). If a defendant with an offense level of 16 or higher qualifies for this two-level reduction, the district court may reduce his sentence by another level if he "assist[s] authorities in the investigation or prosecution of his own misconduct by timely notifying authorities" of his intended plea. U.S.S.G. § 3E1.1(b).

The commentary accompanying § 3E1.1 explains when and how to apply these reductions. In particular, Application Note 2 clarifies that the adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." U.S.S.G. § 3E1.1 cmt. n.2. In "rare situations," a defendant may still qualify for the reduction when he contests issues unrelated to "factual guilt" at trial, like the constitutionality of the statute under which he is sentenced. *Id.*

Coleman accuses the district court of improperly treating this commentary as binding. As he explains, courts may defer to the commentary only after finding "genuine ambiguity" in a guideline. *Kisor v. Wilkie*, 588 U.S. 558, 575 (2019); *United States v. Riccardi*, 989 F.3d 476, 485 (6th Cir. 2021). Genuine ambiguity exists only when "the meaning of the words used is in doubt," *Kisor*, 588 U.S. at 574 (quoting *Bowles v. Seminole Rock & Sand Co.*, 325 U.S. 410, 414 (1945)), after a court has "exhaust[ed] all the 'traditional tools' of construction," *id.* at 575 (quoting *Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*, 467 U.S. 837, 843 n.9 (1984)). To empty its interpretive toolkit, "a court must carefully consider the text, structure, history, and purpose of a regulation." *Id.* (cleaned up).

Coleman claims that, instead of performing this analysis, the district court "reflexively defer[red]" to Note 2. Appellant Br. at 27. But that's not what happened. Far from deferring to the commentary, the district court properly applied the plain text of § 3E1.1(a). Indeed, that guideline's text, history, and purpose unambiguously foreclose Coleman's efforts to receive a reduction for post-sentencing acceptance of responsibility.

We have consistently interpreted the phrase "clearly demonstrates" in § 3E1.1(a) to require defendants seeking a reduction to acknowledge culpability in a timely, consistent way. First and foremost, a clear demonstration of acceptance must be timely. That's because timeliness speaks to the sincerity of the defendant's acceptance of responsibility. For over thirty years, we have refused to credit statements made after a defendant puts the government to its burden of proof, much less statements made after sentencing. *United States v. Williams*, 940 F.2d 176, 182 (6th Cir. 1991) (predating deference to the commentary); *United States v. Whitman*, 209 F.3d 619, 623 (6th Cir. 2000). We have repeatedly—and recently—reiterated this understanding without explicitly deferring to the commentary. *See, e.g.*, *United States v. Prater*, No. 22-5599, 2024 WL 3634526, at *6 (6th Cir. Aug. 2, 2024), *cert. denied*, 145 S. Ct. 1471 (2025); *United States v. Trevino*, 7 F.4th 414, 431–32 (6th Cir. 2021). Section 3E1.1(a) therefore requires "clear[]" acceptance to be prompt.

Clear acceptance must also be consistent. A defendant cannot "clearly" demonstrate acceptance when his conduct contradicts his admissions. *See* U.S.S.G. § 3E1.1(a) cmt. n.3 (noting that evidence of acceptance may "be outweighed by conduct of the defendant that is

inconsistent with such acceptance of responsibility"). Without deferring to the commentary, we have denied the two-level reduction to defendants who minimized their role, shifted blame to coconspirators, or adopted "an attitude of 'defiance' towards federal law." *Trevino*, 7 F.4th at 432; *United States v. Thomas*, 933 F.3d 605, 611–12 (6th Cir. 2019). By the same token, we routinely deny this adjustment when a defendant engages in similar inconsistent conduct after a guilty plea but before sentencing. *United States v. Knuuttila*, No. 24-1211, 2025 WL 2506607, at *14 (6th Cir. Sep. 2, 2025); *United States v. Cadieux*, 846 F. App'x 389, 394 (6th Cir. 2021); *United States v. Castillo-Garcia*, 205 F.3d 887, 889 (6th Cir. 2000). That's because the defendant's inconsistent conduct—regardless of his statements—reveals a disqualifying lack of "true remorse for specific criminal behavior." *United States v. Morrison*, 983 F.2d 730, 734–35 (6th Cir. 1993); *see also United States v. Roche*, 321 F.3d 607, 609 (6th Cir. 2003).

Our analysis fits with § 3E1.1(a)'s drafting history. Section 3E1.1(a) was originally promulgated as a standalone direction for "[s]entencing pursuant to guilty pleas." U.S. Sent'g Comm'n, *Supplementary Report on the Initial Sentencing Guidelines and Policy Statements* 50 (1987). The guideline was explicitly designed to reward defendants who "reduce[d] the burden on the court system" and "save[d] prosecutorial and judicial resources" by avoiding trial. *Id.* at 50–51; *see also* U.S. Sent'g Comm'n, *Acceptance of Responsibility Working Group Report* 1 (1991). In 1992, the Commission added subsection (b) to further reward defendants who "assisted authorities" in a "timely" way. U.S.S.G. § 3E1.1(b). Adding this subsection to § 3E1.1—instead of, for example, U.S.S.G. § 5K1.1's provision on "substantial assistance"— clarified that the entire provision related to "timely" conduct. The Commission's application notes are equally clear about this rationale. *See* U.S.S.G. § 3E1.1 cmt. nn.1, 3, 6 (listing presentencing conduct, including a guilty plea and truthful admission of guilt, that demonstrates acceptance).

Coleman reaches a different conclusion by conflating two distinct concepts: acceptance of responsibility for the offense and post-conviction rehabilitation. Acceptance of responsibility relates to the defendant's acknowledgment of culpability for the charged offense and cooperation with the judicial process during the relevant proceedings—not his efforts to make amends, apologize for his crimes, or ready himself to reenter society while serving his sentence.

The guideline rewards defendants who save the judiciary time, effort, and expense by manifesting prompt and consistent acceptance of responsibility. *See United States v. Kennedy*, 595 F. App'x 584, 592 (6th Cir. 2015). No similar rationale justifies rewarding defendants for diligent rehabilitative conduct after they have already put the government to its burden of proof at trial.

Mechanisms other than § 3E1.1(a) permit district courts to adjust defendants' sentences to reflect their rehabilitation. Defendants may, for instance, request that the district court consider their rehabilitative conduct as part of a motion for compassionate release under 18 U.S.C. § 3582(c)(1)(A) or early termination of supervised release under 18 U.S.C. § 3583(e)(1). Coleman did exactly this in two compassionate-release motions. By the same measure, at resentencing, defendants may request that their post-conviction rehabilitation be considered as a mitigating factor under 18 U.S.C. § 3553(a). *United States v. Pepper*, 562 U.S. 476, 480–81 (2011). Coleman did just that in his sentencing memorandum, and the district court "certainly" credited Coleman for his rehabilitative conduct at resentencing. R. 223, Pg. ID 2089, 2092. Indeed, it was Coleman's rehabilitative conduct that led the district court to reject the government's request for an upward variance and to sentence Coleman within his requested range.

By accepting Coleman's approach, we would also undermine the Commission's efforts to reduce disparities between similar defendants. *See* U.S.S.G. ch. 1, pt. A. If post-sentencing acceptance could be considered at resentencing, two identical defendants who both didn't initially accept responsibility but later demonstrated exemplary rehabilitative conduct could serve vastly different sentences based solely on whether luck allowed one to be resentenced. Coleman himself was resentenced based on one of our court's en banc decisions, which identical defendants in neighboring jurisdictions couldn't use to justify resentencing. Counting post-sentencing acceptance of responsibility at resentencing thus runs contrary to the Guidelines' goal of reducing nationwide sentencing disparities.

The text, history, and purpose of § 3E1.1(a) show that defendants who accept responsibility years after contesting their guilt at trial can't "clearly demonstrate[]" acceptance.

U.S.S.G. § 3E1.1(a).  The district court therefore properly declined to reduce Coleman's sentence for accepting responsibility five years after his sentencing.

### B.  Consideration of Coconspirators' Sentences

Coleman next takes issue with the disparity between his sentence and those of his coconspirators.  On his read, at resentencing, the trial judge erred by "claim[ing] he had no authority to consider Mr. Coleman's argument that the sentencing disparities between him and his [coconspirators] warranted a lower sentence."  Appellant Br. at 34.  But the district court made no such claim.

At resentencing, Coleman's counsel stated that he "would like the [c]ourt to consider disparity in sentences" because "[t]he remaining members of this conspiracy are out and free." R. 223, Pg. ID 2080.  The trial judge responded:  "The Sixth Circuit has indicated that when we look at 3553(a)(6) with regard to disparities in sentences, that that's a nationwide sentencing issue.  It's not focused on the particular defendants in a single case."  *Id*.  Counsel reiterated that he "would ask the Court to consider that issue," then pivoted to requests for drug treatment and a prison transfer.  *Id*., Pg. ID 2081.  The court took notice of all three requests, replying "[y]es, sir."  *Id.*  Coleman's counsel then repeated his request for "a sentence of between 135 and 168 months."  *Id.*  And the court handed down a sentence within that range.  The court concluded by "ask[ing] counsel to state any objections . . . under *United States v. Bostic*" to any part of the sentence.  *Id.*, Pg. ID 2101.  Neither party specifically objected.

Though Coleman's counsel mentioned sentencing disparities, he never argued that the district judge "claimed he had no authority" to consider coconspirator sentencing disparities. Appellant Br. at 34.  When, as here, the district court asked for any objections and the defendant failed to object, we review the sentence's procedural reasonableness for plain error.  *See United States v. Bostic*, 371 F.3d 865, 872–73 (6th Cir. 2004).  To meet this high bar, Coleman must prove that (1) an error occurred, (2) it was obvious or clear, (3) it affected his substantial rights, and (4) it seriously affected the fairness, integrity, or reputation of the proceedings.  *United States v. Vonner*, 516 F.3d 382, 386 (6th Cir. 2008) (en banc).  Under this standard, we reverse

only "in exceptional circumstances" when "the error is so plain that the trial judge was derelict in countenancing it." *Id.* (cleaned up). Those circumstances are not present here.

The district court didn't err by focusing on national sentencing disparities. The sentencing factors reference "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. § 3553(a)(6). In analyzing this factor, the district court correctly identified our longstanding view that disparities are "a nationwide . . . issue." R. 233, Pg. ID 2080. As we have explained, "this factor concerns *national* disparities between defendants with similar criminal histories convicted of similar criminal conduct—not disparities between codefendants." *United States v. Conatser*, 514 F.3d 508, 521 (6th Cir. 2008) (citations omitted). That's because "[d]isparities between the sentences of coconspirators can exist for valid reasons, such as differences in criminal histories, the offenses of conviction, or one coconspirator's decision to plead guilty and cooperate with the government." *Id.* at 522. Our precedent therefore allows—but never requires—district courts to consider the sentences of codefendants or coconspirators.

In any event, Coleman's sentence differs from his coconspirators' for good reason. Coleman was neither indicted nor tried alongside his coconspirators—because they pled guilty, cooperated with police, and testified against him. Their testimony confirmed that Coleman was the ringleader of their distribution scheme and highlighted the scope and severity of his activities. So when it came time for sentencing, Coleman's sentence reflected the centrality of his role and his failure to cooperate with law enforcement. It also accounted for his decades of drug trafficking and gang membership—a criminal history that many of his coconspirators lacked. In short, the district court didn't err, let alone plainly err.

## C. Mitigating Evidence

Next, Coleman asserts that the district court erred by (1) treating evidence of childhood hardship as unconnected to Coleman's crimes and (2) inadequately explaining its reasoning for rejecting this mitigating evidence. But the district court properly declined to credit this evidence.

The district court carefully considered the mitigating evidence Coleman raised in his sentencing memorandum. The court remained "mindful" of Coleman's medical and mental-

health issues and acknowledged that Coleman's age reduced his recidivism risk.  R. 223, Pg. ID 2090, 2092.  And it noted Coleman's clean disciplinary record and "rehabilitative conduct" in a "challenging" prison.  *Id*., Pg. ID 2089.  But it rejected Coleman's argument that childhood poverty, "lack of guidance as a youth," and adolescent "drug addictions" mitigated his offenses. *Id.*, Pg. ID 2092.  The key problem:  The district court did not find Coleman's evidence to be "causally related" or "connected to [his] criminal conduct" of mass drug dealing.  *Id.*

On appeal, Coleman diagnoses three "procedural error[s]" in the district court's analysis. Appellant Br. at 41.  But he didn't raise any of them at resentencing.  First, he never objected to the district court's conclusion that there was no connection between the mitigating evidence and offense.  Second, he never stated that the analysis was inadequately explained.  And third, he never claimed that the trial court's decision not to further reduce his sentence based on this evidence was a legal error.  We therefore review these unpreserved arguments for plain error. *Vonner*, 516 F.3d at 386.  And we find none.

The district court didn't plainly err in concluding there was "no causal connection between the mitigating evidence and the crime."  Appellant Br. at 41.  Courts may "attach diminished persuasive value to evidence that lacks a nexus with the crime of conviction."  *White v. Plappert*, 131 F.4th 465, 483, 495 (6th Cir. 2025) (cleaned up).  Even on appeal, Coleman cannot explain why his childhood adversity led him to distribute narcotics at age 44.  *See id.* at 483 (affording less weight to evidence not tied "to the night" of an offense); *cf. Thornell v. Jones*, 602 U.S. 154, 169 (2024) (requiring a causal connection between adult crimes and adolescent hardship).  Though Coleman's childhood hardship may explain or rationalize his offense, the district court didn't err in concluding that it doesn't mitigate his conduct.  Simply put, mitigation isn't the same as explanation.

And the trial court adequately "show[ed] its work" to reach this conclusion.  Appellant Br. at 41 (quotation omitted).  The district court didn't need to provide a "lengthy explanation" for a within-Guidelines sentence that reasonably accounted for mitigating evidence.  *Rita v. United States*, 551 U.S. 338, 356 (2007); *Vonner*, 516 F.3d at 388.  Though Coleman wishes the trial court had reached a different conclusion, his disagreement with the sentence doesn't justify a second do-over.

## D.  Supervised Release

Coleman additionally argues that the trial judge committed clear error by imposing three supervised-release conditions requiring Coleman to (1) submit to searches of his person, property, and devices, (2) provide access to requested financial information,  and (3) disclose and preapprove new lines of credit.  Since Coleman never objected below, we review for plain error and find none.

When the reasons for the supervised-release conditions are evident from the record, the district court need not explain them in detail.  *United States v. Kingsley*, 241 F.3d 828, 836 (6th Cir. 2001).  And the district court's analysis supporting its custodial sentence may double as a justification for the length and conditions of supervised release.  *United States v. Zobel*, 696 F.3d 558, 572 (6th Cir. 2012).

First, the rationale for the search condition is self-evident in the record.  In light of its pronounced "concern[s] about . . . deterrence," the district court opted for a within-Guidelines custodial sentence precisely because "the defendant will be on supervision."  R. 223, Pg. ID 2096, 2098.  This supervision included requiring Coleman to refrain from alcohol and drug use and participate in mandatory drug testing.  In that context, the search condition makes sense:  It allows authorities to prevent recidivism and enforce the abstinence conditions.

In response, Coleman protests that the district court's reference to his "underlying conviction" somehow suggests that the court "blanketly decided that conspiracy-to-distribute convictions always merit this [search] condition."  Appellant Br. at 44 (relying on *United States v. Oliveras*, 96 F.4th 298, 314 (2d Cir. 2024)).  But the record makes clear that the district court discussed deterrence concerns specific to "this particular case" and "this matter."  R. 223, Pg. ID 2099.  When it did so, it connected Coleman's past history of recidivism, chronic substance abuse, and repeat drug convictions to the special conditions.  Far from suggesting that *any* drug offender should be subject to a search condition, the district court performed the exact kind of "individualized assessment" the law requires.  *Gall v. United States*, 552 U.S. 38, 50 (2007).

The record also clarifies the reasons for imposing the financial conditions.  The trial court required Coleman to allow the probation office to access his financial information and approve

credit charges and lines of credit.  Minutes before imposing this condition, the district court had analyzed Coleman's financial circumstances to set a fine amount fifty percent below the recommended minimum.  Immediately after imposing the financial condition, the court again ran through the defendant's "current financial situation," noting that he still had a remaining balance of $12,260.19 on his $15,000 fine.  R. 223, Pg. ID 2100.  In this context, the financial condition makes intuitive sense:  Coleman would emerge from prison with no financial resources and a substantial financial penalty left to pay.  Monitoring Coleman's lines of credit and charges allows authorities to ensure Coleman pays off this remaining balance without taking on unnecessary debt or resorting to criminal activity.

In short, the rationale for the search and financial conditions is "evident on the overall record," given Coleman's history of drug trafficking and his sentence's financial penalties.  *Kingsley*, 241 F.3d at 836.  So Coleman can't show plain error.

### E.  Amendment 821

At resentencing, Coleman had eight criminal-history points—six from his prior convictions and two from committing the instant offense while under a criminal-justice sentence.  *See* U.S.S.G. § 4A1.1(d).  Coleman requests that we remand to a different district court judge to consider whether Amendment 821 knocks off these final two points.

Amendment 821 retroactively removed the two status points added under § 4A1.1(d) for defendants with six or fewer criminal-history points who committed an offense while under a criminal-justice sentence.  U.S.S.G. app. C supp., amend. 821 (Nov. 1, 2023); *United States v. Sanders*, No. 24-3249, 2024 WL 4579446, at *2 (6th Cir. Oct. 25, 2024).  The district court may discretionarily grant this reduction when it is warranted by the defendant's conduct and history.  *See* U.S.S.G. § 1B1.10 cmt. n.1(B).  To trigger this inquiry, a defendant normally moves for reconsideration before the sentencing judge under 18 U.S.C. § 3582(c)(2).  But if it furthers "judicial efficiency," we may also remand for reconsideration without requiring a defendant to file this motion, regardless of whether we affirm or reverse.  *United States v. Ralston*, 110 F.4th 909, 924 (6th Cir. 2024) (quoting *United States v. Jackson*, 678 F.3d 442, 445–46 (6th Cir. 2012)).

We do so now. On remand, Coleman may brief the district court on the penological justifications for shortening his sentence, including any relevant considerations under the § 3553(a) factors. As always, the ultimate decision to retain or reduce Coleman's sentence depends on the district court's analysis of these factors in the context of Coleman's criminal history.

## F. Reassignment

Coleman argues that the district judge's comments at sentencing and resentencing about Coleman's characteristics, likelihood of recidivism, and courtroom conduct demonstrated such overwhelming bias that we should reassign the case to a different judge on remand. We disagree.

"Reassignment is an extraordinary power—rarely invoked and then only with the greatest reluctance." *United States v. Maxwell*, 800 F. App'x 373, 377 (6th Cir. 2020). To determine whether reassignment is necessary, we consider whether (1) the original judge would have substantial difficulty in putting aside previously expressed views; (2) reassignment would preserve the appearance of justice; and (3) reassignment would entail waste and duplication disproportionate to any gain in preserving the appearance of fairness. *Solomon v. United States*, 467 F.3d 928, 935 (6th Cir. 2006).

None of these factors favors Coleman. Far from struggling to put aside his previous views, the district court did exactly what it should do when confronted with new evidence and arguments at resentencing. At Coleman's initial sentencing, the district court varied upward based on Coleman's history of recidivism, courtroom antics, and failure to present mitigating evidence. We affirmed the reasonableness of this above-Guidelines sentence. *Coleman*, 835 F. App'x at 77. But when circumstances changed, the district judge readily put aside his previously expressed views to grant habeas relief and resentence Coleman within a lower Guidelines range. At resentencing, the district court properly calculated a new Guidelines range, "certainly" accounted for Coleman's intervening rehabilitative conduct, and diligently reviewed new information about his personal characteristics. R. 223, Pg. ID 2089, 2092. Given the district court's careful treatment of this case over the past decade, there is no reason to assume that remanding to a different judge would promote fairness or judicial economy.

In response, Coleman analogizes to cases where the district court "committed the same error" in calculating the defendants' sentences on remand, *see United States v. Domenech*, 63 F.4th 1078, 1084 (6th Cir. 2023), or made "serious errors" because of the defendant's courtroom conduct, *see United States v. Johnson*, 24 F.4th 590, 609–10 (6th Cir. 2022). This case is the opposite of those. Unlike in *Domenech*, this district court properly calculated and applied a new Guidelines range at resentencing. And unlike in *Johnson*, the district court has already proven that it can set aside any preconceptions from Coleman's courtroom conduct by substantially revising his sentence to account for intervening legal and personal changes.

\* \* \*

We affirm Coleman's sentence and remand to the district court for consideration of Amendment 821.